# Exhibit "F"

Exhibit "F"

AN APPRAISAL OF

# THE 5.086 ACRES OF VACANT LAND LOCATED AT THE SOUTHEAST CORNER OF NE 32ND STREET AND NE 8TH AVENUE IN THE CITY OF BOCA RATON, FLORIDA

FILE NUMBER 17-77112

PREPARED FOR

MR. WILLIAM B. SWAIM

AS OF

JANUARY 4, 2018

BY

MICHAEL R. SLADE, MAI, SRA, CRE
CALLAWAY & PRICE, INC.




# Callaway & Price, Inc.

**Real Estate Appraisers And Consultants**
**www.callawayandprice.com**
*Licensed Real Estate Brokers*

**SOUTH FLORIDA**
1410 Park Lane South
Suite 1
Jupiter, FL 33458
Phone (561) 686-0333
Fax (561) 686-3705

Michael R. Slade, MAI, SRA, CRE
Cert Gen RZ116
m.slade@callawayandprice.com

Stephen D. Shaw, MAI, AI-GRS
Cert Gen RZ1192
s.shaw@callawayandprice.com

Robert A. Callaway, MRICS
Cert Gen RZ2461
r.callaway@callawayandprice.com

**TREASURE COAST**
1803 South 25th Street
Suite 1
Fort Pierce, FL 34947
Phone (772) 464-8607
Fax (772) 461-0809

Stuart
Phone (772) 287-3330
Fax (772) 461-0809

Stephen G. Neill, Jr., MAI
Cert Gen RZ2480
s.neill@callawayandprice.com

**SPACE COAST**
1120 Palmetto Avenue
Suite 1
Melbourne, FL 32901
Phone (321) 726-0970
Fax (321) 726-0384

Curtis L. Phillips, MAI
Cert Gen RZ2085
c.phillips@callawayandprice.com

**CENTRAL FLORIDA**
2816 E. Robinson Street
Orlando, FL 32803
Phone (321) 726-0970
Fax (321) 726-0384

Curtis L. Phillips, MAI
Cert Gen RZ2085
c.phillips@callawayandprice.com

**Please respond to the South Florida Office**
**E-Mail: m.slade@callawayandprice.com**

January 16, 2018

Mr. William B. Swaim
Manager
NE 32nd Street, LLC
5455 Via Delray
Delray Beach, FL 33484

Dear Mr. Swaim:

We have made an investigation and analysis of the 5.086-acre parcel of vacant land along the Intracoastal Waterway, located at the southeast corner of NE 32nd Street and NE 8th Avenue, in the City of Boca Raton, Florida. The Subject Property largely consists of submerged land and mangrove marshland, substantially of areas denoted as spoil and conservation easements. However, at the client's request, we are valuing the Subject Property based on the hypothetical condition that it is comprised of high and dry, developable vacant land with a bulkhead unencumbered by easements potentially impeding development of single family homes. In addition, our subdivision analysis is based on the hypothetical condition that the land has been legally subdivided into five single-family residential lots improved with a bulkhead and ready for development.

The Subject Property will be further described both narratively and legally within the following Appraisal Report. The purpose of this investigation and analysis was to provide our opinion of the Market Value of the Fee Simple Estate of the Subject Property as of January 4, 2018, via the Sales Comparison Approach, based on the Hypothetical Conditions outlined. At the client's request, we have also provided our opinion of the Market Value of the Fee Simple Estate of the Subject Property, as proposed via the Subdivision Analysis, based on the Hypothetical Conditions outlined.

This report has been prepared for our client and intended user, NE 32nd Street, LLC. The intended use is for internal decision making. The scope of work performed is specific to the needs of the intended user and the intended use. No other use is intended, and the scope of work may not be appropriate for other uses. The scope of work performed included a complete analysis of the Subject Property. A detailed scope of work description is contained in the report.

Based upon the scope of the assignment, our investigation and analysis of the information contained within this report, as well as our general knowledge of real estate valuation procedures and market conditions, it is our opinion that:

The Market Value of the Fee Simple Estate of the Subject Property, via the Sales Comparison Approach, Based on the Hypothetical Conditions Outlined, as of January 4, 2018, was: **$12,900,000**

The Market Value of the Fee Simple Estate of the Subject Property, As Proposed Via the Subdivision Analysis, Based on the Hypothetical Conditions Outlined, as of January 4, 2018, was: **$14,600,000**

A description of the property appraised, together with an explanation of the valuation procedures utilized, is contained in the body of the attached report. For your convenience, an Executive Summary follows this letter. Your attention is directed to the General Assumption and Limiting Conditions and underlying assumptions upon which the value conclusions are contingent.

Respectfully submitted,
CALLAWAY & PRICE, INC.

Michael R. Slade, MAI, SRA, CRE
Cert GenRZ116

James D. Murray, Jr., MAI
Cert Gen RZ2419

MRS/JDM/js/17-77112
Attachments





| | | |
|---|---|---|
| PROPERTY TYPE | : | 5.086-acre parcel of land fronting the Intracoastal Waterway. |
| LOCATION | : | The Subject Property is located at the southeast corner of NE 32nd Street and NE 8th Avenue, in the City of Boca Raton, Florida 33431. |
| DATE OF VALUATION | : | January 4, 2018. |
| PROPERTY DESCRIPTION: | | |
| LAND | : | The Subject parcel contains 5.086 acres, or approximately 221,546 square feet of land (see Hypothetical Conditions). |
| ZONING | : | The Subject Property is zoned R1B, Single Family Residential District, by the City of Boca Raton. The R1B District allows a density up to 1.86 dwelling units per acre. |
| LAND USE PLAN | : | The Land Use Plan for the Subject Property is RL, Residential Low by the City of Boca Raton. |
| HIGHEST AND BEST USE: | | |
| AS VACANT | : | Residential Development. |
| VALUE INDICATIONS: | | |
| MARKET VALUE OF THE FEE SIMPLE ESTATE OF THE SUBJECT PROPERTY, VIA THE SALES COMPARISON APPROACH, BASED ON THE HYPOTHETICAL CONDITIONS OUTLINED, AS OF JANUARY 4, 2018 | : | $12,900,000 |
| MARKET VALUE OF THE FEE SIMPLE ESTATE OF THE SUBJECT PROPERTY, AS PROPOSED VIA THE SUBDIVISION ANALYSIS, BASED ON THE HYPOTHETICAL CONDITIONS OUTLINED, AS OF JANUARY 4, 2018 | : | $14,600,000 |





Page No.


CERTIFICATION .... 1
DEFINITION OF THE APPRAISAL PROBLEM .... 11
Purpose, Date of Value, and Interest Appraised .... 11
Intended Use and User of Appraisal .... 11
Legal Description .... 11
Market Value .... 11
Fee Simple Estate .... 12
Hypothetical Conditions .... 12
Extraordinary Assumption .... 13
Exposure Time .... 13
Marketing Time .... 14
SCOPE OF WORK .... 15
NEIGHBORHOOD DATA .... 16
RESIDENTIAL MARKET OVERVIEW .... 18
PROPERTY DATA .... 19
Location .... 19
Zoning .... 20
Land Use Plan .... 20
Easements and Deed Restrictions .... 20
Site Size, Shape and Access .... 20
Utilities .... 22
Topography .... 22
Census Tract .... 22
Flood Hazard Zone .... 23
Assessed Value and Taxes .... 24
Property History .... 24
Description of Improvements .... 25
HIGHEST AND BEST USE .... 26
Conclusion – As Vacant .... 27
Discussion of Vacant Land Sales .... 28
Discussion of Adjustments .... 29
Conclusion – Land Value Analysis .... 43
SUBDIVISION ANALYSIS (DISCOUNTED SELLOUT ANALYSIS) .... 44
Preface .... 44
Total Sellout Estimate .... 44
Absorption Period Estimate .... 44
Expense Estimate .... 44
Conclusion – Lot Pricing .... 49
Absorption Period Estimate .... 50
Discussion of Absorption .... 50
Selling Expenses .... 51
Discount Rate .... 52
Subdivision Analysis Conclusion .... 53





ADDENDA
Letter of Engagement
ALTA/ACSM Land Title Survey
Qualifications:
Michael R. Slade, MAI, SRA, CRE
James D. Murray, Jr., MAI





## CERTIFICATION

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in the property that is the subject of this report, and we have no personal interest with respect to the parties involved.

4. We have performed services (February 26, 2017), as an appraiser, or in any other capacity regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. The analyses, opinions, and conclusion were developed, and this report was prepared, in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) and The Interagency Appraisal and Evaluation Guidelines, December 10, 2010.

9. James D. Murray, Jr. has made a personal inspection of the property that is the subject of this report.

10. No one provided significant real property appraisal assistance to the persons signing this certification.

11. The use of this report is subject to the requirements of the State of Florida relating to review by the Florida Real Estate Appraisal Board.





12. This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

13. The reported analyses, opinions and conclusions were developed, and this report was prepared, in conformity with the requirements of the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

14. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

15. As of the date of this report, Michael R. Slade, MAI, SRA, and James D. Murray, Jr., MAI, have completed the continuing education program for Designated Members of the Appraisal Institute.

Michael Robert Slade

Michael R. Slade, MAI, SRA, CRE
Cert Gen RZ116

James D. Murray, Jr., MAI
Cert Gen RZ2419





## GENERAL ASSUMPTIONS

1. Unless otherwise stated, the value appearing in this appraisal represents the opinion of the Market Value or the Value Defined AS OF THE DATE SPECIFIED. Market Value of real estate is affected by national and local economic conditions and consequently will vary with future changes in such conditions.

2. The value opinion in this appraisal report is gross, without consideration given to any encumbrance, restriction or question of title, unless specifically defined.

3. It is assumed that the title to the premises is good; that the legal description is correct; that the improvements are entirely and correctly located on the property described and that there are no encroachments on this property, but no investigation or survey has been made.

4. No responsibility is assumed for matters legal in nature, nor is any opinion of title rendered. No right to expert testimony is included, unless other arrangements have been completed. In the performance of our investigation and analysis leading to the conclusions reached herein, the statements of others were relied on. No liability is assumed for the correctness of these statements; and, in any event, the appraiser's total liability for this report is limited to the actual fee charged.

5. No rights to expert witness testimony, pre-trial or other conferences, depositions, or related services are included with this appraisal. If as a result of this appraisal process Callaway and Price, Inc., or any of its principals, its appraisal consultants or experts are requested or required to provide any litigation services, such shall be subject to the provisions of the engagement letter or, if not specified therein, subject to the reasonable availabilty of Callaway and Price, Inc. and/or said principals or appraisers at the time and shall further be subject to the party or parties requesting or requiring such services paying the then applicable professional fees and expenses of Callaway and Price, Inc. either in accordance with the engagement letter or arrangements at the time, as the case may be.

6. Any material error in any of the data relied upon herein could have an impact on the conclusions reported. We reserve the right to amend conclusions reported if made aware of such error. Accordingly, the client-addressee should carefully review all assumptions, data, relevant calculations, and conclusion within 30 days of delivery of this reported and should immediately notify us of any questions or errors.

7. The market value reported herein assumes that all taxes and assessments have been paid, and assumes a fee simple interest unless otherwise reported. The body of the report will define the interest appraised if it differs.





8. Neither all nor any part of the contents of this report (especially any conclusions, the identity of the appraiser or the firm with which he is connected, or any reference to the Appraisal Institute or any of its designations) shall be disseminated to the public through advertising media, public relations media, news media, sales media or any other public means of communication without our prior written consent and approval.

9. It is assumed that there are no hidden or unapparent conditions of the property, subsoil, or structures which would render it more or less valuable. The appraiser assumes no responsibility for such conditions or the engineering which might be required to discover these factors.

10. Our opinion of value was based on the assumption of competent marketing and management regarding the property. If there is no competent marketing and management, then the market value opinion herein may not apply.

11. The value indications estimated herein are based on the Subject site containing 5.086 acres, or approximately 221,546 square feet. This site area was provided by the ALTA/ACSM Land Title Survey, dated 12/21/2016, performed by Laing Survey, LLC. This information is considered to be accurate; however, if any discrepancies exist between the information provided and actual information, the values reached herein may not apply.

12. This appraisal report is based upon a hypothetical condition that the Subject Property is comprised of high and dry, developable vacant land. The Subject Property largely consists of submerged land and mangrove marshland, as depicted on the ALTA/ACSM Land Title Survey. Further, as indicated on the survey, the site is comprised substantially of areas denoted as spoil and conservation easements. At the client's request we have valued the land as high and dry upland with a bulkhead unencumbered by easements potentially impeding development of single family homes (see Hypothetical Conditions).

13. The development plan provided by the client indicates five contiguous lots with a total site area of 4.992 acres. This is slightly less than the 5.086 acres that comprises the Subject Property according to the survey. Further, the amount of front feet differs very slightly. In our opinion, these differences are minimal and do not impact our value estimate(s). If the actual site area or dimensions differ significantly from our estimates, the value indication(s) herein may need to be revised.





## LIMITING CONDITIONS

1. As detailed in the Definition of the Appraisal Problem section of this report, the client has requested that our analyses be based upon a Hypothetical Condition that the Subject Property is comprised of high and dry, developable vacant land. The Subject Property largely consists of submerged land and mangrove marshland, as depicted on the ALTA/ACSM Land Title Survey. Further, as indicated on the survey, the site is comprised substantially of areas denoted as spoil and conservation easements. At the client's request we have valued the land as high and dry upland with a bulkhead unencumbered by easements potentially impeding development of single family homes. In addition, our subdivision analysis is based on the hypothetical condition that the land has been legally subdivided into five single-family residential lots improved with a bulkhead and ready for development.

2. No extraordinary assumptions are part of this assignment.

3. Unless otherwise stated in this report, the existence of hazardous substances, including without limitation stachybotrys chartarum (mold), asbestos, polychlorinated biphenyls, petroleum leakage, or agricultural chemicals, which may or may not be present on the property, or other environmental conditions, was not called to the attention of, nor did the appraisers become aware of such during their inspection. The appraisers have no knowledge of the existence of such materials on or in the property unless otherwise stated. The appraisers, however, are not qualified to test for such substances or conditions. If the presence of such substances, such as asbestos, urea formaldehyde foam insulation, or other hazardous substances or environmental conditions, may affect the value of the property, the value estimated is predicated on the assumption that there is no such proximity thereto that would cause a loss in value. We are unaware of very wet conditions that may have existed for days or weeks which are required to grow mold. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them.

4. The Americans with Disabilities Act ("ADA") became effective January 26, 1992. The appraisers have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property, together with a detailed analysis of the requirements of the ADA, could reveal that the property is not in compliance with one or more of the requirements of the Act. If so, this fact could have a negative effect upon the value of the property. Since the appraisers have no direct evidence relating to this issue, possible noncompliance with the requirements of ADA in estimating the value of the property has not been considered.








**AERIAL VIEW OF SUBJECT PROPERTY**





## DEFINITION OF THE APPRAISAL PROBLEM

Purpose, Date of Value, and Interest Appraised

The purpose of this investigation and analysis was to provide our opinion of the Market Value of the Fee Simple Estate of the Subject Property as of January 4, 2018, via the Sales Comparison Approach, based on the Hypothetical Conditions outlined. At the client's request, we have also provided our opinion of the Market Value of the Fee Simple Estate of the Subject Property, as proposed via the Subdivision Analysis, based on the Hypothetical Conditions outlined.

Intended Use and User of Appraisal

This report has been prepared for our client and intended user, NE 32nd Street, LLC. The intended use is for internal decision making. The scope of work performed is specific to the needs of the intended user and the intended use. No other use is intended, and the scope of work may not be appropriate for other uses.

Legal Description

*LEGAL DESCRIPTION Parcel 1:*
*That portion of the East 273.3 feet of the North one half (N 1/2) of the Northeast one-quater (NE 1/4) of the Northeast one-quarter (NE 1/4), Section 17, Township 47 South, Range 43 East, lying West of the West right of way line of the Intracoastal Waterway from Jacksonville, Florida to Miami, Florida, as that right of way line is shown on Plat recorded in Plat Book 17, Page 22, Public Records of Palm Beach County, Florida;*
*TOGETHER WITH:*
*All that part of Government Lot 2, of Section 16, Township 47 South, Range 43 East, lying west of the west right of way line of the Intracoastal Waterway, as such Intracoastal Waterway is shown on the plat thereof on file and of record in the Public Records of Palm Beach County, Florida, in Plat Book 17, Pages 1 to 25. Said lands situate in the City of Boca Raton, Palm Beach County, Florida.*
*CONTAINING 221,542 SQUARE FEET, 5.086 ACRES*

Source: ALTA/ACSM Land Title Survey, dated 12/21/2016, performed by Laing Survey, LLC.

Market Value

"As defined in the Agencies' appraisal regulations, the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

a. Buyer and seller are typically motivated;





b. Both parties are well informed or well advised, and acting in what they consider their own best interests;

c. A reasonable time is allowed for exposure in the open market;

d. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

e. The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

Source: The Interagency Appraisal and Evaluation Guidelines, Federal Register, Volume 75, No. 237, December 10, 2010, Pgs. 61-62.

Fee Simple Estate

The Dictionary of Real Estate Appraisal, Sixth Edition 2015, by the Appraisal Institute, defines Fee Simple Estate on page 90 as follows:

"Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat."

Hypothetical Conditions

The Dictionary of Real Estate Appraisal, Sixth Edition 2015, by the Appraisal Institute, defines Hypothetical Conditions on page 113 as follows:

1. "A condition that is presumed to be true when it is known to be false."

2. "A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis."

"Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis."

Per the client's request, our analyses are based upon a Hypothetical Condition that the Subject Property is comprised of high and dry, developable vacant land. The Subject Property largely consists of submerged land and mangrove marshland, as depicted on the ALTA/ACSM Land Title Survey. Further, as indicated on the survey, the site is comprised substantially of areas denoted as spoil and conservation easements. At the client's request we have valued the land as high and dry upland with a bulkhead unencumbered by easements potentially impeding development of single family homes. In addition, our subdivision analysis is based on the





hypothetical condition that the land has been legally subdivided into five single-family residential lots improved with a bulkhead and ready for development.

Extraordinary Assumption

The Dictionary of Real Estate Appraisal, Sixth Edition 2015, by the Appraisal Institute, defines Extraordinary Assumptions on page 83 as follows:

> "An assumption, directly related to a specific assignment, as of the effective date of the assignment results, which if found to be false, could alter the appraiser's opinions or conclusions. Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal or economic characteristics of the Subject property; or about conditions external to the property such as market conditions or trends; or about the integrity of data used in an analysis."

This appraisal assignment is not subject to any extraordinary assumptions.

Exposure Time

The Dictionary of Real Estate Appraisal, Sixth Edition 2015, by the Appraisal Institute, defines Exposure Time on page 83 as follows:

1. "The time a property remains on the market."

2. "The estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal. Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market."

There is a requirement under Standard Two to report exposure time according to the latest USPAP publication. "Exposure Time" is different for various types of property under different market conditions.

We have reviewed the exposure time on the sales contained in the Sales Comparison Approach in this appraisal. Based on that data and the current market, it is our opinion that the Subject Property would have had an exposure time of approximately 12 months or less.